1  WILLIAM R. TAMAYO -- #084965 (CA)
2  JONATHAN T.  PECK -- #12303 (VA)
   CINDY O'HARA -- #114555 (CA)
3  EQUAL EMPLOYMENT OPPORTUNITY
     COMMISSION
4  San Francisco District Office
   350 The Embarcadero, Suite 500
5  San Francisco, California  94105
   Telephone:     (415) 625-5653
6
7  Facsimile:      (415) 625-5657

8  Attorneys for Plaintiff EEOC

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11

12  EQUAL EMPLOYMENT OPPORTUNITY          Civil Action No. C-07-04974 JL
    COMMISSION,
13                                        **SECOND JOINT CASE
                                          MANAGEMENT STATEMENT**
14                    Plaintiff,
                                          Date:  September 3, 2008
15        v.                              Time:  10:30 a.m.
                                          Ctrm:  F
16  MIDSTATE CONSTRUCTION
    CORPORATION,
17
                      Defendant.
18

19

20        The parties to the above-entitled action jointly submit this Second Case

21  Management Statement and Proposed Order and request the Court to adopt it as its Case

22  Management Order in this case.  Those matters which have changed since the first Joint Case

23  Management statement are set forth initially.  For convenience of the Court (to have all material

24  in the same document), the provisions of the first Case Management Statement that have not

25  changed are set forth after the revised provisions.

26  //

27  //

28  //

**REVISED PROVISIONS OF SECOND CASE MANAGEMENT STATEMENT**

**7.    Disclosures:  Whether there has been full and timely compliance with  the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made**.

The parties have complied with the initial disclosure requirements.

**8.    Discovery:  Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, and a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f).**

The parties have engaged in written discovery; no depositions have been taken to date by either side.  The parties do not presently anticipate needing relief from the discovery rules, however should such need arise, the parties will attempt to resolve the issue through stipulated agreement.

**12.    Settlement and ADR:  Prospects for Settlement, ADR efforts to date,   and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution**

The parties had an initial mediation session with Court appointed mediator Greta Schnetzler through the Northern District of California's ADR program on August 5, 2008.  The case did not settle on that date, however the parties agreed to have a second mediation session, and are having a conference call on September 4, 2008 to plan for the second session.  In addition, with the mediator's assistance, the parties worked out a protective order (which has been filed with and signed by the Court) which will allow for the advancement of certain discovery which will assist in the possibility of reaching a mediated settlement..

**17.    Scheduling:    Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.**

The parties jointly propose the following:

1.    Cutoff for all discovery (expert and non-expert) 3 months before trial

2.    Expert disclosure: one month before discovery cutoff

3.    Dispositive motions filed no later than 3 weeks after discovery cutoff.

The parties propose a trial date in October or November 2009.

//

//

-2-

## PROVISIONS UNCHANGED FROM FIRSTCASE MANAGEMENT STATEMENT

**1.     Jurisdiction and Service:  The basis for the court's subject matter jurisdiction over Plaintiff's claims and Defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.**

Jurisdiction is based on federal question jurisdiction and based on the case being brought by a federal agency.  The case was brought by the U.S. Equal Employment Opportunity Commission, for alleged violation of Section 706 (f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §2000e-5 (f) (1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a).

**2.     Facts:  A brief chronology of the facts and a statement of the principal factual issues in dispute.**

A.     Plaintiff's Statement

Charging Party Fermin Casas was a laborer for Defendant Midstate Construction (Midstate), a commercial construction general contractor engaged in the building and remodeling of supermarkets, industrial parks, restaurants, etc.  Charging Party Casas worked steadily for Defendant Midstate in 2003 and 2004, with occasional periods of layoff due to slowdowns in the construction industry.  He received good evaluations and raises.  In approximately April of 2005 he returned from a layoff, was given a raise, and assigned for the first time to the crew of supervisor Nello Ghilarducci.  At this point, Charging Party Casas, who is Mexican, began to be subjected to the national origin based harassment which Supervisor Ghilarducci perpetrated against Charging Party Casas and other Latino workers.  Supervisor Ghilarducci would make disparaging comments to the Latino workers, such as calling them "stupid Mexicans" and "f*cking Mexicans," mock the Latino workers' language skills, and subject them to other harassment on a daily basis.  Charging Party Casas and other Latino workers complained to members of Defendant Midstate's management about this harassment, but nothing was done to remedy it.

1

B.    Defendant's Statement

2

Defendant Midstate Construction Corporation ("Midstate") is a commercial

3

general contractor.  Charging Party Fermin Casas was hired in or around August 2003 as a

4

Laborer.  Mr. Casas does not speak fluent English and he therefore could only be placed on crews

5

with bilingual Spanish-speaking workers who could interpret for him.  At all relevant times,

6

Midstate employed Nello Ghilarducci as a foreman, which is a non-supervisory, lead position.

7

Mr. Ghilarducci directed the work of the laborers on his crew, but did not have the authority to

8

hire or fire employees. Mr. Casas was assigned to a crew with Mr. Ghilarducci for the first time

9

from August 2003 to March 2004.   On April 1, 2004, Project Superintendent Tom Stalling, Mr.

10

Casas' supervisor, recommended that Mr. Casas receive an increase in his hourly rate.  In

11

November of 2004, Mr. Casas was laid off due to lack of work during the winter months, a

12

common event in the construction industry.  He was subsequently rehired when work picked up.

13

After rehire in 2005, Mr. Casas also worked with Mr. Ghilarducci.   Also in 2005, Mr. Stallings

14

recommended Mr. Casas for a promotion and another raise.  During that time period, Mr.

15

Ghilarducci did not make any comments to Mr. Casas or any other employee about his or their

16

national origin, ancestry, ethnicity or race.  Mr. Ghilarducci did have some communication issues

17

with Mr. Casas because Mr. Casas' English language skills were poor and were the source of

18

major inconvenience on the project.  Mr. Ghilarducci did comment to Mr. Casas that he should

19

learn to speak English to get ahead.  It was true that any further advancement for Mr. Casas

20

within the Company would be dependent upon his becoming proficient in English in order to

21

supervise crews, as communication in English is essential to communicating with other workers,

22

to safety issues and to reviewing construction plans.  To date, the EEOC has not identified any

23

other persons who purportedly claim that Mr. Ghilarducci made comments in the workplace

24

about national origin, ancestry, ethnicity or race.  Mr. Casas did not complain to any management

25

employee of Midstate about Mr. Ghilarducci during his employment and no other employee has

26

ever complained to Midstate's management that Mr. Ghilarducci engaged in harassment based

upon national origin.

27

28

-4-

**3.    Legal Issues:  A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.  What are the legal issues genuinely in dispute?**

    A.    Plaintiff's Statement

    At issue is whether Defendant engaged in unlawful national-origin based harassment of Charging Party Casas and similarly situated Latino/Hispanic employees.

    B.    Defendant's Statement

    The EEOC filed this lawsuit after it received an administrative Charge of Discrimination from Mr. Casas.  The EEOC conducted an investigation of this matter through its administrative procedures prior to filing this lawsuit.  There are no facts, only legal conclusions, alleged in the Complaint in this lawsuit and the EEOC has not yet disclosed to Defendant any evidence regarding other employee, if any, whom the EEOC alleges were subjected to national origin harassment.  Accordingly, Midstate can respond only as to Mr. Casas. Based upon the limited information currently available to it, Midstate anticipates the following legal issues:

    (a)    Whether any of the EEOC's allegations are barred in whole or in part by all applicable statutes of limitation, including but not limited to 42 U.S.C. §§ 2000e, *et seq.*

    (b)    Whether any of the EEOC's allegations are barred in whole or in part because they do not reasonably fall within the scope of any claims made in any administrative charge timely filed with the EEOC. 42 U.S.C. §§ 2000e, *et seq.*

    (c)    Whether Mr. Casas (any other similarly situated persons) are barred in whole or in part from recovering compensatory damages due to a failure to mitigate damages. *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992); *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273(4th Cir. 1985).

    (d)    Whether Mr. Ghilarducci is a "supervisor" of Midstate for purposes of Title VII. 42 U.S.C. §§ 2000e, *et seq.*

1      (e)      Whether Midstate knew or should have known about the alleged harassment.  29

2   CFR §1606.8(d).

3      (f)      Whether the alleged conduct, if it occurred, was welcome.  42 U.S.C. §§ 2000e, *et*

4   *seq.*

5

6      (g)      Whether the EEOC, Casas, or the other alleged similarly situated persons are

7   barred in whole or in part from recovering compensatory and/or punitive damages because

8   Midstate had in place a policy to prevent discrimination in its workplace and made good faith

9   efforts to implement and enforce that policy. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742

10  (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

11

12     **4.      Motions:  All prior and pending motions, their current status and any
       anticipated motions.**

13         A.      Plaintiff

14         No motions have yet been filed.  Plaintiff EEOC does not anticipate filing any

15  motions other than discovery motions to the extent that such are necessary.

16         B.      Defendant

17         Midstate has not filed any motions to date.  Based upon information received in

18  the discovery process, Midstate will consider whether to file any dispositive motions.

19     **5.      Amendment of Pleadings:  The extent to which parties, claims, or defenses are
       expected to be added or dismissed and a proposed deadline for amending the
       pleadings.**

20

21         The parties do not anticipate amending the pleadings.

22     **6.      Evidence Preservation:  Steps taken to preserve evidence relevant to the
       issues reasonably evident in this action, including interdiction of any document-
       destruction program and any ongoing erasures of e-mails, voice mails, and other
       electronically recorded material.**

23

24

25         A.      Plaintiff's Statement

26         Plaintiff EEOC automatically archives its e-mails.  Plaintiff knows of no other

27  electronically recorded material that may be reasonably relevant to this action.

28  //

-6-

B.    Defendant's Statement

Midstate is not aware of any electronic evidence regarding this case in its possession, custody or control. Midstate does not provide e-mail or any other access to its computer systems to Laborers or Foreman, such as Mr. Casas and Mr. Ghilarducci.

**9.    Class Actions:  If a class action, a proposal for how and when the class will be certified.**

A.    Plaintiff's Statement

Although Plaintiff EEOC has filed this matter on behalf of Charging Party and similarly situated individuals, the provisions of Federal Rule of Civil Procedure do not apply and class certification is not necessary.

B.    Defendant's Statement

Midstate is not currently aware of any allegations by the EEOC that would make this case a class action.

**10.    Related Cases:  Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.**

The parties do not know of any related cases.

**11.    Relief:  All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the basis on which it contends damages should be calculated if liability is established.**

A.    Plaintiff's Statement

Plaintiff EEOC seeks damages for the emotional distress of Charging Party Casas and similarly situated Latino/Hispanic employees resulting from the national origin based harassment, as well as punitive damages.   Said damages will be based on such amounts as are proved at trial.  Plaintiff EEOC also seeks injunctive relief such as training of supervisory personnel and revision of policies to correct past and prevent future harassing and/or discriminatory conduct based on national origin by Defendant.

B.    Defendant's Statement

Midstate denies that Mr. Casas, or any of the unidentified, alleged similarly situated persons, suffered any national origin discrimination or damages as a result of its conduct.

-7-

Accordingly, Midstate contends that there is no basis for any monetary damages or injunctive relief.

**13.    Consent to Magistrate Judge For All Purposes:  Whether all parties will consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.**

      A.    <u>Plaintiff's Statement</u>

      Plaintiff EEOC has consented to the jurisdiction of the assigned magistrate.

      B.    <u>Defendant's Statement</u>

      Midstate consents to the jurisdiction of the assigned magistrate.

**14.    Other References:  Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.**

      The parties do not believe that such referral is appropriate in this case.

**15.    Narrowing of Issues:  Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at  trial, and any request to bifurcate issues, claims, or defenses.**

      None at present.

**16.    Expedited Schedule:  Whether this is the type of case that can be handled on an expedited basis with streamlined procedures.**

      The parties do not believe that this case should be handled on an expedited basis.

**18.    Trial:  Whether the case will be tried to a jury or to the court and the expected length of the trial.**

      Plaintiff has requested a jury trial.  The parties anticipate a trial length of two weeks.

**19.    Disclosure of Non-party Interested Entities or Persons:  Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.  In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.**

      A.    <u>Plaintiff's Statement.</u>

      As a governmental entity, pursuant to Local Rule 3-16(a) Plaintiff EEOC is exempt from this requirement.

-8-

1

        B.     Defendant's Statement.

2

        Midstate has filed the "Certification of Interested Entities or Persons" and listed

3

only: Roger Nelson, sole shareholder of Midstate.

4

     **20.**     **Such Other Matters as May Facilitate the Just, Speedy and Inexpensive**

5

**Disposition of This Matter:**

6

        The parties are not aware of such other matters at this time.

7

**E-filing certification:** I, Cindy O'Hara, certify that I have obtained the concurrence of Jamie

8

Rudman, counsel for Defendant Midstate Construction Corporation, for the filing of this Second

9

Joint Case Management Statement.

10

DATED:  August 22, 2008        SIMPSON, GARRITY & INNES

11

        By:  /S/    Jamie Rudman

12

            LAURA E. INNES
            JAMIE RUDMAN

13

        Attorneys for Defendant

14

        MIDSTATE CONSTRUCTION CORPORATION

15

DATED:  August 22, 2008        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION

16

17

        By:  /S/    Cindy O'Hara
            CINDY O'HARA

18

        Attorney for Plaintiff EEOC

19

20

21

22

23

24

25

26

27

28

-9-